**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Naomi Skinner, | ) No. CV06-2577-PHX-JAT |
| Plaintiff/Counterdefendant, | ) **ORDER** |
| vs. | ) |
| Arizona Public Service Company, | ) |
| Defendant/Counterclaimant. | ) |

Pending before the Court is the unopposed Motion for Summary Judgment of Defendant Arizona Public Service Company ("APS") (Doc. #45). For the reasons stated below, the Court grants summary judgment.

**I.    FACTUAL BACKGROUND**

As a preliminary matter, the Court notes that, in failing to respond to APS's Motion for Summary Judgment, Plaintiff Naomi Skinner ("Plaintiff" or "Ms. Skinner") did not file a separate controverting statement of facts or dispute the facts submitted by APS in any way. Thus, the facts submitted by APS in support of its Motion for Summary Judgment are deemed admitted for purposes of the same. *See* LR Civ 56(1)(b).

In her complaint, Ms. Skinner alleges that APS discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in

1  Employment Act ("ADEA") when APS terminated her based on her age, race, and gender.[1]
2  Ms. Skinner further alleges that she was terminated by APS in retaliation for complaining
3  about gender and race discrimination in violation of Title VII. (Amended Complaint, Doc.
4  #5.)

5  APS hired Ms. Skinner in April 1997 to work as a designer in Information Services
6  Communications Systems. (Defendant's Separate Statement of Undisputed Facts In Support
7  of Its Motion for Summary Judgment ["SOF"] ¶ 1, Doc. #46.) Ms. Skinner was terminated
8  from APS in October 2003 during a reduction of the workforce. (SOF ¶ 2.) After her
9  termination, Ms. Skinner filed an internal grievance with APS. (SOF ¶ 3.) On November
10 25, 2003, Ms. Skinner filed a charge of discrimination with the Equal Employment
11 Opportunity Commission ("EEOC") alleging that APS had discriminated against her based
12 on her sex and race and retaliated against her as well. (SOF ¶ 4.) Ms. Skinner did not file
13 a lawsuit based on that November 2003 charge.[2] (SOF ¶ 7.)

14 On October 10, 2005, Ms. Skinner was rehired by APS as a planner for the newly
15 formed Underground Assurance Section ("UA"). (SOF ¶¶ 10-11.) Ms. Skinner, along with
16 four other planners, was supervised by Section Leader, Roy Sapp ("Mr. Sapp"). (SOF ¶¶ 10-
17 12.) As a planner, Ms. Skinner was responsible for inspecting pad mounted transformers in
18 Arizona. (SOF ¶ 14.) Her duties included: (1) assuring transformers are locked and have no
19 holes in them; (2) checking transformers for leaks and if leaks are found, requesting testing;
20 (3) determining if surrounding vegetation needs to be trimmed or removed; (4) building route
21 maps using the MAXIMO computer software program; (5) interfacing with APS customers

---

[1] The Court dismissed Ms. Skinner's claims under the Thirteenth Amendment, Fourteenth Amendment, Civil Rights Act of 1991, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 43 U.S.C. § 1989 in its April 18, 2007 Order granting APS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. #10.)

[2] In her Amended Complaint, Ms. Skinner includes allegations of discrimination related to her previous period of employment with APS between 1997 and 2003. In its June 18, 2008 Order, this Court dismissed any claims arising out of Ms. Skinner's first period of employment with APS. (Doc. #47.)

1    when vegetation needs to be removed and obtaining customer's written consent; and (6)
2    preparing associated documentation, some of which becomes the work instructions for the
3    vegetation and line crews. (Id.) Each planner is expected to determine the work to be
4    performed at each pad mounted transformer location. (SOF ¶ 18.)

5    On no less than three occasions, Mr. Sapp counseled Ms. Skinner regarding problems
6    with her work performance, specifically her disorganization, her failure to complete section
7    maps, and her repetitive questions. (SOF ¶¶ 23, 29, 37.) On March 8, 2006, Mr. Sapp met
8    with the Senior Human Resources Consultant, Mary Fields, to discuss Ms. Skinner's
9    deficient performance. (SOF ¶ 41.) At that time, Mr. Sapp decided to terminate Ms. Skinner
10   who was still in her six month probationary period. Ms. Skinner was terminated the
11   following day on March 9, 2006. (Id.)

12   On March 13, 2006, Ms. Skinner filed a charge of discrimination with the EEOC
13   alleging that she was terminated from APS based on her age, gender, and race and was
14   retaliated against for complaining about the discrimination. (SOF ¶ 43.) Ms. Skinner also
15   filed an internal grievance with APS on March 16, 2006. (SOF ¶ 44.) On October 27, 2006,
16   Ms. Skinner filed this lawsuit against APS. (Complaint, Doc. #1.)

17   **II. MOTION FOR SUMMARY JUDGMENT**
18   **A. STANDARD**

19   Summary judgment is appropriate when "the pleadings, depositions, answers to
20   interrogatories, and admissions on file, together with affidavits, if any, show that there is no
21   genuine issue as to any material fact and that the moving party is entitled to summary
22   judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated,
23   "against a party who fails to make a showing sufficient to establish the existence of an
24   element essential to that party's case, and on which that party will bear the burden of proof
25   at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

26   **B. DISPARATE TREATMENT**

27   In its Motion for Summary Judgment, APS claims that Ms. Skinner has failed to show
28   sufficient evidence of disparate treatment on account of her race, gender, and age in violation

1 of Title VII and the ADEA. This Court agrees. "The standard analysis under Title VII is the
2 same as that under ADEA." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir.
3 2000). This Court will apply the *McDonnell Douglas* burden shifting analysis for each.
4 *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

5     Ms. Skinner has the initial burden of establishing a prima facie case of discrimination
6 which APS may then rebut by providing a "legitimate, non-discriminatory reason" for the
7 disparate treatment. *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 599 (9th Cir. 1993)
8 (citation omitted). If APS provides such a reason, Ms. Skinner must establish its reason is
9 a pretext for discrimination. *See id.* Despite the intermediate burden of production shifting,
10 the ultimate burden of proving discrimination remains with Ms. Skinner at all times. *See*
11 *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

12     Here, APS argues that it is entitled to summary judgment because Ms. Skinner has
13 failed to establish a prima facie case of discrimination in violation of either Title VII or the
14 ADEA. The plaintiff may establish a prima facie case by presenting direct evidence of
15 discriminatory intent. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.
16 1998); *see also Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 979-80 (D. Ariz. 1999).
17 Alternatively, a plaintiff can establish a prima facie case circumstantially by meeting the four
18 requirements outlined in *McDonnell Douglas*: the plaintiff (1) is a member of a protected
19 class, (2) performed according to the employer's legitimate expectations, (3) suffered an
20 adverse employment action, and (4) was treated less favorably than other employees
21 similarly situated. *See Chuang v. University of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115,
22 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). "[T]he requisite degree
23 of proof necessary to establish a prima facie case for Title VII ... claims on summary
24 judgment is minimal and does not need to rise to the level of a preponderance of the
25 evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

26     Here, it is undisputed that Ms. Skinner has no direct evidence of race, gender, or age
27 discrimination. Indeed, Ms. Skinner herself testified in her deposition that she has no direct
28 evidence of age, race, or gender discrimination and that her allegations of such are based

- 4 -

solely on her "personal belief." (SOF ¶¶ 45-47.) *See Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp. 2d 970, 988 (C.D. Cal. 2000) (court found no direct evidence to make a prima facie case where there was no comment that plaintiff was terminated based on gender or any incident showing gender bias during the time in question). Therefore, in order to survive summary judgment, Ms. Skinner must establish a prima facie case of discrimination through the burden shifting analysis set forth in *McDonnell Douglas* and identified above.

APS argues that Ms. Skinner has failed to establish a prima facie case of age, race, or gender discrimination because Ms. Skinner cannot demonstrate that she was meeting APS's legitimate performance expectations. (Defendant's Motion for Summary Judgment, Doc. #45, p. 11-12.) APS maintains that in order to adequately perform her job as a Planner, Ms. Skinner was expected to work independently and make a determination of the work to be performed at each pad mounted transformer location. Because planners may have one hundred or more jobs open at any given time, organizational skills are essential. APS contends that Ms. Skinner did not possess these requisite skills.

In her deposition, Ms. Skinner agreed that four key skills needed to perform her job included organization, the ability to work autonomously, the ability to make decisions, and customer service skills. (SOF ¶ 19.) Ms. Skinner conceded that if a Planner did not use or possess these skills, she could not be effective in her job. (Id.) Ms. Skinner also conceded that she received the same training as all other planners. (SOF ¶ 17.) Notwithstanding the above, however, the undisputed evidence reflects that Ms. Skinner could not work independently, could not make autonomous decisions, and lacked the requisite organizational skills.

Among her performance deficiencies, Ms. Skinner's supervisor, Mr. Sapp, noticed that she was asking numerous people the same basic questions often repeatedly and seemed unable to retain the information provided to her. (SOF ¶ 20.) Other planners also raised concerns that Ms. Skinner was having trouble retaining information and would continually ask the same questions and often of multiple people. (SOF ¶ 21.) Craig Cohee, the UA Construction/Maintenance Coordinator, saw Ms. Skinner on a daily basis and answered her

1  numerous questions. (Id.) Mr. Cohee believed that Ms. Skinner was unable and possibly
2  afraid to make decisions. (Id.) On November 21, 2005, Mr. Sapp formally counseled Ms.
3  Skinner regarding her performance, most notably the concerns about her frequent questions.
4  (SOF ¶ 23.) On February 5, 2006, Mr. Sapp discovered Ms. Skinner working in a rear
5  easement despite explicit instructions not to do so. (SOF ¶ 28.) Mr. Sapp counseled Ms.
6  Skinner regarding the incident the following morning. (SOF ¶ 29.)

7  Shortly thereafter, Ms. Skinner expressed concerns about a lack of training and
8  perceived inconsistencies in field decisions to Mr. Sapp's supervisor, Mike Neal. (SOF ¶¶
9  31-32.) Following that discussion, Mr. Sapp spent several half-days providing Ms. Skinner
10 with one-on-one training and accompanying her on her routes in the field. (SOF ¶ 35.)
11 Notwithstanding this additional training, however, the undisputed facts establish that Ms.
12 Skinner's performance problems continued. (SOF ¶¶ 36-40.) On March 6, 2006, after being
13 informed by the line crew that it was unable to complete any work due to errors in Ms.
14 Skinner's paperwork, Mr. Sapp again counseled Ms. Skinner. (SOF ¶ 37.) When Mr. Sapp
15 arranged to meet Ms. Skinner on her routes on March 8, 2006, Ms. Skinner was unable to
16 find a major intersection on her usual routes. When Ms. Skinner finally arrived, Mr. Sapp
17 noted that her truck was in disarray. (SOF ¶¶ 38-39.) Based on his observations, Mr. Sapp
18 concluded that Ms. Skinner lacked the organizational skills necessary to be a planner.[3] (Id.)

19 Given the above, the undisputed evidence demonstrates that Ms. Skinner lacked the
20 key skills needed to perform her job. There is ample undisputed testimony that she was
21 unable to work autonomously or make decisions, and that her organization skills were
22 inadequate. (SOF ¶¶ 19-42.) Ms. Skinner does not dispute this evidence nor does she
23 provide any evidence to the contrary. Ms. Skinner has failed to show that she was
24 legitimately meeting APS's performance expectations, and she has therefore failed to
25 establish a prima facie case under both Title VII and the ADEA.

---

[3] Ms. Skinner's co-worker, Sheri Kennelly-Lowinger, also testified that she spent almost six months correcting Ms. Skinner's errors after her termination. (SOF ¶ 42.)

- 6 -

1   APS also argues that Ms. Skinner cannot establish a prima facie case of discrimination because she cannot show that others outside of her protected class were treated more favorably. (Motion, Doc. #45, p. 12-13.) Ms. Skinner concedes that she received the same training as the other planners in the UA section and has presented no evidence to show that any other planners were treated more favorably. (SOF ¶ 17.) Failing to meet all of the requirements articulated in *McDonnell Douglas*, Ms. Skinner has failed to establish a prima facie case of race, age, or gender discrimination, and APS is entitled to summary judgment.

### C.    RETALIATION

Ms. Skinner also claims that APS retaliated against her after she complained about the race and gender discrimination.[4] To establish a prima facie case of retaliation under Title VII, the Plaintiff must establish: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) that a causal link exists between the protected activity and adverse action. *Mannatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the defendant articulates such a reason, then the ultimate burden to demonstrate it was just a pretext for a retaliatory motive lies with the plaintiff. *Id.* Only after this ultimate burden is proven does the case proceed past the summary judgment stage. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

APS alleges that Ms. Skinner has failed to establish a prima face case of retaliation because she cannot show that she engaged in a protected activity. (Motion, Doc. #45. P. 15-17.) Plaintiff maintains that she engaged in protected activity when she complained to Mr.

---

[4] Although Ms. Skinner initially alleged retaliation under Title VII and the ADEA, she appears to have dropped her claim for retaliation under the ADEA in her Response to Defendant's Answer and Counterclaim. (Doc. #18, p.6, ¶ 3.) This Court notes, however, that even if Ms. Skinner's claim for retaliation under the ADEA was still pending, the Court would dismiss that claim as well for the reasons articulated above. *See Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997) (treating retaliation claims under Title VII and the ADEA alike and deciding them using the *McDonnell Douglas* framework).

1  Sapp's supervisor, Mr. Neal. It is undisputed, however, that the only complaints ever lodged
2  by Ms. Skinner were general comments to Mr. Neal about a lack of training and perceived
3  inconsistencies in the planners' field decisions. APS maintains that Ms. Skinner's retaliation
4  claim fails because these vague and general comments to Mr. Neal were not related to her
5  race or gender in any way and therefore do not constitute a protected activity under Title VII.
6  (Id.)

7  As explained above, Ms. Skinner complained to Mr. Neal that she was not provided
8  with proper training and her belief that other planners were making inconsistent decisions
9  in the field. (SOF ¶ 32.) After that complaint, Mr. Sapp provided Ms. Skinner with several
10 half days of one-on-one training and accompanied her on her routes in the field. (SOF ¶ 35.)
11 At the time of her complaint, Mr. Neal advised Ms. Skinner that she should also bring her
12 concerns to Mr. Sapp, and that if she did not get the response she needed, to call him back
13 and they would sit down with Mr. Sapp and a human resources representative to discuss her
14 training needs. (SOF ¶ 34.) Mr. Neal never heard back from Ms.Skinner regarding any
15 further concerns. (Id.) Importantly, at no time during that process or at any time during her
16 employment, did Ms. Skinner ever suggest much less state specifically that these issues were
17 related to her race or gender.

18 Although complaints to an employer may constitute statutorily protected activity
19 under Title VII, it is well-settled that the complaint must indicate that the discrimination
20 occurred because of sex, or race, or some other protected class. *See Pieszak,* 112 F.Supp.2d
21 at 993-994 (finding that the plaintiff did not establish that she was engaged in protected
22 activity when her complaints of harassment did not mention illegal sexual harassment).
23 General complaints that do not indicate a connection to a protected class or that fail to
24 provide facts sufficient to create such an inference do not constitute a protected activity under
25 Title VII. *See id.* Ms. Skinner's complaints to Mr. Neal were void of any such reference to
26 her race or gender. (SOF ¶¶ 31-35.) Given the foregoing, Ms. Skinner cannot establish that
27 she engaged in a protected activity under Title VII, and APS is entitled to summary judgment
28 on Ms. Skinner's retaliation claim.

1   Based on the foregoing findings,

2   **IT IS ORDERED** granting Defendant APS's Motion for Summary Judgment against Naomi Skinner (Doc. #45). To the extent Defendant's Motion seeks summary judgment on claims raised in Paragraphs 4 through 21 of Plaintiff's Amended Complaint, the Court has already dismissed these claims in its June 18, 2008 Order and therefore denies that portion of Defendant's Motion for Summary Judgment as moot; and

7   **IT IS FURTHER ORDERED** that Defendant APS's Counterclaim for Breach of Contract will be deemed withdrawn based on footnote 3 of APS's Motion for Summary Judgment. Because this Order resolves all claims between all parties, the Clerk of the Court shall enter Judgment in favor of Defendant and against Plaintiff as to all Plaintiff's claims in her Amended Complaint and judgment of dismissal, neither party to take anything, as to Defendant's counterclaim.

13  DATED this 30th day of March, 2009.

James A. Teilborg
United States District Judge